Well, good morning, and may it please the court, my name is Ben Wiesner, and I represent the petitioner Mr. Jorge Burgos, and I would like to reserve two minutes of time for my rebuttal. Anymore, there are very few categorical crimes involving moral turpitude aside from the obvious offenses like murder, rape, arson, fraud, where the offense does not inherently involve fraud, or if no injury is required, then the analysis is more complicated. So, counsel, let me stop you because I have a sort of systemic concern or procedural concern or dilemma that I want both counsel to respond to. There was an old case, Gonzalez, which held that assault with a deadly weapon is a crime involving moral turpitude. Then we have a more recent case, Carr, which holds that it's not a crime involving moral turpitude. Now, in a case that directly raised those issues to this Court, we would try to figure out if in some way the old case had been undermined by subsequent Supreme Court or in-bank decisions, we would normally have to call a case in-bank. However, it is an indirect thing because it's the BIA that's looking at it. What are they supposed to do if they find two conflicting Ninth Circuit cases on an issue? What are they supposed to do? Do they just pick one? Do they pick the old one? Do they pick the new one? Well, Your Honor, in this case, they seem to pick the old one. I know that, but is that okay? What are they supposed to do? Your Honor, in this case, in this particular area of law, logic says and experience says that they pick the new one. The Gonzalez v. Barber case was from 1953. There have been no fewer than four major black-letter changes in the law since then and countless dozens or hundreds of BIA and court decisions since that time. The most relevant to this case are two decisions, one from the Supreme Court. That would be the famous Taylor case, setting forth the modified and categorical analyses, and then a BIA case called Matter of Short, which sort of codified a great deal of CIMT jurisprudence. Matter of Short was decided in 1989, and Taylor was in 1986. That's probably way off, but I use it so many times I actually forget the specifics of it sometimes. Regardless, let's go to the Gonzalez v. Barber for a moment. The cases that that Gonzalez v. Barber decision relied upon don't really support the position, but without very much substance. There are two cases from the Second Circuit, Zaffirano v. Corsi and Cicerelli v. Curran, 1933 and 1926. In both of those cases, the alien applicant conceded, without argument, that their offense for assault or battery with a deadly weapon was a CIMT. And then in the case from this circuit in 1925, Wieden v. Taiokichi, the crime was actually assault with a deadly weapon with the intent to actually inflict injury, which was held to be a CIMT. And so the Gonzalez v. Barber statement, because that's really all it is, doesn't stand on very strong footing. It is a holding, and I guess what I haven't heard in your answer is a sort of more broadly worded sort of procedural context for what it is the board is supposed to do when it faces conflicting decisions. Gonzalez didn't contain much reasoning, but it did contain a holding, and it appears to be in conflict with a later case. And your suggestion was, well, they should take the more recent one, and maybe that's right. That isn't what our court does, but, of course, the BIA can't make us take a case and back, which is where I think the dilemma comes up for how we should analyze what the board has done. Well, Your Honor, there's plenty of precedent for a BIA or a subsequent panel to disagree with or find as outdated or irrelevant a prior panel decision. We have a recognized way of doing that for Miller v. Gammie. We have to conclude that it's been undermined to such an extent by later case law. Yeah, you can't just flip a coin, Mr. Wiesinger, but that's, you know, and you can't say, well, I'd rather you take this one or I'd rather you take that one. But I have a question about the statute that we have. Apparently they amended the complaint to this conspiracy to commit with, I guess, conspiring with another person to use force and violence. And then it looks like the facts certainly indicate that violence were involved. Can we just jump over that issue and do the modified categorical? And does your client lose at that point? No, Your Honor, and that's because the actual judgment of conviction does not incorporate the complaint or the amended complaint. The judgment does not say guilty as charged in the amended complaint. And that's AR 596 and 597, and this court requires a statement of some kind like that in order to actually use the facts as alleged in a complaint as the factual basis for a conviction. That would be this court's decision in Vidal 504 Federal 1072. Well, I'm a little bit confused by this particular charge of conspiracy. I don't have any familiar with this Nevada statute as a practitioner, and it looks like the only two people are there are the two domestic partners that are fighting. That's correct, Your Honor, and I believe... It's this statute. Well, the parties and the court might be kind of victimized by a poorly drafted plea agreement in this case because you're right, there was nobody else to conspire with in the room. It was just Mr. Burgos and his girlfriend at that time. I don't have any explanation for you there other than... I'm wondering if it was sort of almost like a mutual combat statute and then the fact that someone ups it with deadly force, then that's how you... Because, I mean, generally if you're conspiring to do violence on someone, the quote-unquote alleged victim isn't one of the co-conspirators. That's correct, Your Honor. We don't have much to go on in the record of conviction. But don't we have... Pardon me, this is Judge Bea. I'm not... I don't think I follow you. We have here information which specifically says that there was violence upon the person, that is, Burgos' girlfriend, with a deadly weapon to wit, a three-foot long piece of wood, in that Burgos, I'm putting that name in, struck the victim several times on her shoulder and head with that weapon. And he pleaded guilty to the information. Are you telling me that that is not a document of conviction under the modified categorical approach? It is, insofar as it shows that he was indicted before he was convicted. No, no, no, no. He was... He pled guilty. He admitted each and every allegation of the information properly stated. Your Honor, with all due respect, I don't believe that the judgment of conviction actually says that. If you go back to the record, it says, entered a plea of guilty to the crime of conspiracy to commit battery with a deadly weapon. And then it goes into, you know, when the defendant appeared, before what division. It does not incorporate any facts or findings with regard to any complaint whatsoever. So the judgment of conviction stands on its own. You don't need a complaint or an indictment. No, you don't need it. But the question is whether it is a... I can't remember the case name, but is a document of conviction that we can consider on a modified categorical approach? Not under U.S. v. Vidal, Your Honor, because it wasn't specifically incorporated as charged in the complaint. That's very clear. If it's not as charged in the complaint, then we don't know exactly what factual basis he pled to unless we can produce a transcript of the plea colloquy. The plea colloquy is not in the record. Right. Counsel, you actually have used up your time, although we've used a lot of it with questions. So we'll, and I know you don't have the clock in front of you, but we'll give you some rebuttal time and we'll hear next from the government. Your Honor, who is the rest of the panel? I'm sorry. This is Judge Graber presiding. I thought you were aware. No, I was not. We tried to look it up yesterday. I'm so sorry. I would have introduced us. This is Judge Graber. Judge Callahan was asking some other questions, and Judge Baio was kind enough to introduce himself. Thank you. Thank you. Good morning. May it please the Court, Tiffany Walters Kleinert for the respondent. Could you speak a little louder? Sure. Tiffany Walters Kleinert for the respondent, the United States Attorney General. Counsel, I'd like you to address the sort of systemic question that bothers me. There's a 1953 case that says assault with a deadly weapon is a crime involving moral turpitude. And then we have Carr, which is a 1996 case in which the alien was convicted of assault with a deadly weapon. And we said Carr's weapons offense is not a crime of moral turpitude. And then citing a 1994 Ninth Circuit case, two of them for that proposition. So we have two diametrically opposed holdings on the same issue. If it were a direct issue to this Court, we could not just pick one. We would have to either determine that the earlier one was fatally undermined by subsequent holdings of the Supreme Court or the bank court, or we would have to call the case in bank. The BIA, it seems to me, is in obviously a different position because you can't make us go in bank and you can't do that work for us. But it seems to me peculiar that the BIA can just pick the old case without even thinking about the process that this Court necessarily would go through, which is to determine whether the later case superseded it because of intervening events. And none of that analysis is in the BIA's decision. And so I guess my concern is why is that okay? What is the BIA supposed to do in this situation? In this situation, it's relevant that the issue is whether or not a particular conviction is a crime involving moral turpitude. This Court in Marmalee Hill Campus held that the decision as to whether a specific conviction is a crime involving moral turpitude is an interpretation of the statute over which the Board, Congress entrusted the Board with interpretation. So this Court gives the Board's interpretation Chevron deference. But there's no explanation. It's just a sort of hipsy-dixit, and then they cite a case that very well may not even be good law. That's my problem. They just say, well, we think it is, and so we're going to cite this old case. Where does that leave us? I don't know why that's sufficient. There's no analysis. I think essentially what the Board did is looked at the later case and found that because it was decided by a three-judge panel, it couldn't actually overrule Gonzales v. Barber. But it can't. But that's only part of the analysis that this Court goes through when there are conflicting cases. The first question is whether the old case is still good law or whether intervening things have made it no longer good law under the Miller v. Gamme test and analytical framework. But the BIA doesn't do that. They don't explain that if that's indeed what they think. I just don't understand why it's sufficient to just say, well, here it is. Certainly there's not much explanation in that regard. The Board does cite to its own precedent decisions, which is why I feel that Montelejo's campus and the Brands X case law is helpful, because it involves the Board's interpretation of an ambiguous statute that Congress has given it authority to interpret. And so most recently in the Uppel case, this Court recognized or pointed to Matter of Medina, a prior presidential Board case law, finding that assault with a deadly weapon is a crime involving moral turpitude. But it isn't. Okay. The other thing is that conspiracy, this is kind of an odd statute. And they don't seem to wrestle with that. I mean, it seems that the co-conspirator is the victim. And so that, you know, whereas in the general sense when they're having a conspiracy, when they're comparing it, it's not like this. This is a very factually odd situation, and it appears to be some sort of plea bargain that went on. And I don't know what that meant, but then there's not much analysis. So how do we really give that Chevron deference when it doesn't seem to wrestle with the oddities of this case? There are definitely factual oddities in this case. I would point the Court to the administrative record at 598, which is document entitled Appearances, Hearings, where the document does explicitly state that he pled guilty to the amended information. So I do believe we can look to that. There are factual problems. I think it comes from the fact that he was originally charged with battery assault with a deadly weapon and domestic violence and pled down. And we simply don't have the facts to explain why that particular charge was chosen, but he did plead guilty to it. So, but, I mean, to say that that so Gonzales and Carr aren't exactly like... They're not exactly. They're not exactly like it. So picking one without analysis makes it a little more difficult to give Chevron deference, not, you know, if the analysis had gone on, that might be more the case. But I've never seen a statute quite like this, and I'm not sure. To me, having as a California lawyer and having been both a defender and a prosecutor, this sort of looks like it's kind of one of those hodgepodges that they decide that it's when you can't really decide who started the fight, but then someone used the board. You kind of come up with something, and I don't know if these are... I don't even know if this is quite a real charge. I mean, that they sort of maybe shoehorned this in to give him something lesser. But, all right. That being said, if we can't decide whether really that it's a CIMT under the categorical, do you think there's enough for the modified categorical here? I would say there is enough for the modified categorical. As to the categorical, I would like to point out that we wouldn't get into the factual basis undermining the conviction. The fact that he pled guilty would be sufficient to look at the guilty plea as charged. Which then brings us back to the question of whether categorically conspiracy to assault with a deadly weapon is a crime of moral turpitude, which sort of... Correct. I think the other thing that is of concern to me, at least, is that the BIA doesn't even cite In Re Short, which is the BIA's own sort of standard for how to analyze whether a particular crime categorically is, or in general is, a crime of moral turpitude. And they don't cite UPL, which is our case, that says here's how to analyze that. And so it just seems to me that it's been kind of short-circuited at the board level. As for UPL, UPL did come out after the board decision on this case. Well, that's a good point. But Short clearly was many years before and set forth kind of the general mode of analysis. I believe what the board was doing in this case is because it did have its own precedential case law clearly holding that assault with a deadly weapon is a CIMT. It didn't go through the full analysis and relied primarily on Medina and Matter-G-R. But they would be saying that conspiracy. Correct. And as far as the conspiracy charge, the board cited McNaughton v. INS, this Court's decision holding that when you're analyzing conspiracy conviction, you look to the underlying criminal conduct. May I ask you, is there any factual basis whatever for finding a conspiracy? Here a man beats a woman. Who's the conspirator with the man? Unfortunately, I don't have any additional factual information other than what's in the record. All that we know is that he pled guilty to this charge, and it was a plea bargain down from him. You say you disagree with Ms. Huizinga. You say that there is a record indication, a document of conviction, that's a term of art, that he pleaded guilty to the amended information, and that's in Administrative Record 598. Yes. It's in a document entitled Appearances, Hearings, which details what occurred at each hearing and regarding the guilty plea. But that's not a document of conviction of the underlying crime. That's a piece of evidence that's in the Administrative Record. Certainly. Yes. But he did plead guilty to conspiracy to commit battery with a deadly weapon, which is the exact charge that's alleged in the amended criminal complaint. And the amended criminal complaint has the facts that he beat her three times. Correct. I believe some of the cases that Petitioner cited involve situations where the information actually charged a different charge than what was pled guilty to. So I would say this is distinguishable in that regard. Is the amended information? Okay. I've got it here. Okay. Thank you. I believe it's at 599. 599. As to your prior question regarding Judge Callahan, regarding the modified categorical approach, the Board didn't venture into the modified categorical approach. So to the extent that this Court finds that it needs to, it should be remanded to allow the Board to do that in the first instance. Okay. Thank you. Thank you, Counsel. Mr. Wiesinger, you may have a minute for rebuttal if you would like. Are you there? Counsel? There you are. I apologize. I had muted my mic while Counsel for the Government was on. Okay. Were you able to hear everything? Oh, of course. Okay. Good. Because we don't want to have to do this over again. The crucial part about the conspiracy charge is that the actual acts complained of never took place. And under Nicanor Romero from this Court and Matter of Silver Trevino from the Board, a crime is not categorically a CIMT without both an act and a criminal intent. One without the other will never qualify. And this is part of Matter of Short, one of the two cases, Matter of Short and Taylor, that undermines Gonzales v. Barber. Matter of Short, usually does not involve moral turpitude. Assault or simple assault or simple battery does not involve moral turpitude. And possessing a weapon does not involve moral turpitude. You can't just automatically complete the two without a little bit more analysis, and that's what the actual Board did. What about the use of a weapon, Mr. Wiesinger, not just the possession of the weapon, but the use of the weapon by striking the woman with a board? Your Honor, I would stand by my position that the actual judgment of conviction does not incorporate the amended complaint. How do you handle the citation of Administrative Record 598 and 599, which shows that there was a plea guilty to the amended information? Your Honor, I would argue that the docket sheet, which is what AR-598 is, is not part of the ROC. Wait a minute. The transmission is not very clear. I didn't hear what your answer was. The document of 598 is not part of the ROC. It's merely an internal court docket sheet. It could contain errors. It could contain extraneous information. It is not part of the recognized record of conviction, according to Snellenberg, Tocatli, that line of cases. Thank you, Counsel. You've exceeded your rebuttal time, and I know you can't see the clock to know that. But thank you both for your helpful arguments. The case just argued is submitted, and we will adjourn until 930 with a different panel. Thank you very fairly. And, Your Honors, I appreciate your indulgence in allowing me to appear telephonically. Thank you. Thank you. All rise.
judges: Graber, Callahan, Bea